W. B. and Dorothy Lenamon v. Commissioner.
Lenamon v. Commissioner
Docket No. 66130.
United States Tax Court
T.C. Memo 1959-245; 1959 Tax Ct. Memo LEXIS 4; 18 T.C.M. (CCH) 1164; T.C.M. (RIA) 59245; December 31, 1959
*4 1. Respondent disallowed deductions for additions to petitioner's reserves for bad debts in the amount of $4,540.57 for the calendar year 1953, and $7,914.68 for the fiscal year ended September 30, 1954. Respondent, by concession on brief, reduced the amount in question for fiscal 1954 to $4,364.19. Held, that petitioner has failed to meet the burden of proof of error in respondent's determination of disallowance, except to the extent of the conceded amount, and has likewise failed to prove error on the part of respondent in failing to allow further additions to such reserves claimed by petitioners by amended petition. 2. Respondent determined that assets totalling $1,055 entered on petitioner's books in 1953, represented undisclosed income, and restored the amounts to income accordingly. Respondent conceded on brief that $550 of the above amount was not 1953 income. Held, as to the remainder ( $505), that petitioner has failed to meet the burden of proof of error in respondent's determination. James F. Goodman, Esq., Post Office Box 527, Waco, Tex., for the petitioners. Harold A. Chamberlin, Esq., and Allen T. Akin, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: This proceeding involves deficiencies in income tax and additions to tax determined against petitioners as follows: Additions to Tax Under
Taxable Year Ended
Deficiencies
Sec. 294(d)(1)(B)
Sec. 294(d)(2)
December 31, 1953
$2,782.06
$415.88
September 30, 1954
3,908.52 $60
373.72
Petitioners do not assign error with respect to respondent's determination that they are liable for additions to tax imposed by section 294(d)(2) of the Code of 1939 for each of the taxable years in question and for additions to tax under section 294(d)(1)(B), supra, for the fiscal year ended September 30, 1954, although they do allege in their petition that such additions to tax are in controversy. Petitioners produced no evidence at the trial and did not present *6 any argument on brief with respect to said additions. We, therefore, approve respondent's determinations as to each of said additions to tax without further discussion in our Opinion. The issues remaining for our consideration are (1) whether petitioners have met the burden of proof of error in respondent's determination disallowing certain additions to reserves for bad debts or in failing to allow further additions to said reserves claimed by petitioners in their amended petition for the years in question, and (2) whether petitioners have met the burden of proof of error in respondent's determination that certain assets recorded in petitioners books in the taxable year 1953 represented additional (undisclosed) income for said year. Findings of Fact W. B. and Dorothy Lenamon, husband and wife, residing in Waco, Texas, filed joint Federal income tax returns for the calendar year 1953, and for the fiscal year ended September 30, 1954, with the district director of internal revenue, Austin, Texas. Petitioners' books were maintained and their income tax returns filed upon an accrual basis of accounting. W. B. Lenamon will hereinafter be referred to as petitioner. During the taxable *7 years involved, petitioner was engaged in the operation of a lumber yard and in the business of building small homes for sale in Waco, Texas. In instances where purchasers of said homes were unable to pay the difference between the total cost of the house and the first mortgage, which was placed with a conventional financial institution, petitioner would take a second lien note, or other evidence of debt, for the balance. The various asset accounts (other than fixed assets) for which reserves were set up by petitioner as of the end of the taxable years in question were as follows: Sept. 30,
1953
1954
Accounts receivable
$ 9,900.00
$ 652.82
Allowance for loss
4,500.00
130.56
Houses in progress
$48,577.49
$38,952.60
Allowance for loss on re-
possessed houses
750.00
None
Equity in houses taken in
trade
$ 7,900.00
$ 3,016.71
Allowance for loss
3,450.00
None
Mechanics liens receivable
$25,833.10
$10,883.21
Allowance for loss
2,585.75
2,176.64
Second lien notes receiv-
able
$11,090.69
$ 9,578.14
Allowance for loss
6,654.41
3,831.26
Short term notes receivable
$ 5,989.57
Allowance for loss
1,197.91
Mortgage notes receivable
$97,010.67
9,701.07
Total reserves or allow-
ances
$17,940.16
$17,037.44
*8 Petitioner acquired a tract of land known as 4012 North 25th Street, Waco, Texas, by deed dated June 12, 1952, for a price of $550, which transaction was omitted from the books in 1952 but recorded as a correcting entry in 1953. During the course of his business, petitioner acquired from an individual, McKutchen, an account receivable in the amount of $4,500 for the sale of lumber which receivable was charged off by petitioner as worthless during the taxable year 1953. McKutchen died on December 30, 1953. His widow told petitioner her husband had left no money or insurance. The houses for which McKutchen had bought the lumber were not in his name. Petitioner did not employ a regular bookkeeper at his place of business. He kept notations of his business transactions, closing statements on all sales, canceled checks, deposit slips, and other business papers which he turned over to his auditor each month. The auditor would post the information turned over to him and prepare ledger sheets reflecting petitioner's business transactions. Petitioners' joint income tax return for the taxable year 1953 claimed, among others, deductions as follows: Bad Debt expense
$ 4,500.00
Loss on Mechanic's Lien
2,585.75
Loss on Second Lien Notes
5,260.01
$12,345.76
*9 Petitioner's balance sheet for the taxable year ended December 31, 1953, discloses investment accounts, among others, designated "Mortgage Notes Receivable" ($65,449.76) and "Pioneer Savings Association Stock" ($5,153.29). No deduction for the establishment of reserves or for additions to reserves with respect to these accounts was claimed by petitioners on their return filed for the taxable year 1953. Opinion I. Additions to Reserves for Bad Debts Respondent determined that petitioner's deductions claimed as additions to reserves for bad debts were excessive in the amount of $4,540.57, for the taxable year 1953. With respect to the taxable year ended September 30, 1954, respondent determined that additions to reserves were excessive to the extent of $7,914.68, but by concession on brief, reduced this excess to $4,364.19. The amounts determined to be excessive were restored to income for the respective years involved. Petitioner, in opposition, contends that the additions to reserves deducted by him were reasonable in nature within the intendment of section 23(k)(1) of the Code of 1939 and the correlative regulations. [1] Petitioner also, by amended petition, claimed further *10 deductions on the theory that he was entitled to additions to reserves in excess of those claimed on his returns for the years in question. The issues raised thereby are governed by the same principles as those applicable to respondent's disallowance of additions to reserves taken on the returns and will be considered in connection therewith. *11 Section 23(k)(1), supra, permits the deduction of "(in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts." Congress has made the deduction contingent upon the Commissioner's discretion, and, in order to prevail, petitioner must prove that the disallowance of the deductions in the years involved was a misuse of that discretion. In this connection, in , (C.A. 5, 1950), affirming , the Court of Appeals said (p. 592): "The Commissioner, under the applicable statute, was vested with a discretion in determining what constituted a reasonable addition to a reserve for bad debts and his determination is entitled to more than a mere presumption of correctness. The burden was on petitioner to show that the Commissioner abused his discretion and its proof falls far short of meeting that heavy burden." We have also discussed the problem in a number of cases including , in which we said (pp. 158, 159): "The statute, in providing for reserves for bad debts, imposes the condition that it shall be in the discretion of the Commissioner, *12 thus giving a sanction to his determination which, while still subject to review (cf. ) is not to be lightly set aside. A taxpayer has an absolute right to choose to deduct his worthless debts when they are ascertained to be worthless and charged off, but if instead he chooses to deduct additions to a reserve, he subjects himself to the reasonable discretion of the Commissioner. Reserves of any sort are not ordinarily deductible, , and when Congress so far departs from the customary practice as to permit such a deduction as to a bad debt reserve, the condition is as important as the permission. Such a deduction presents substantial problems of administration, and it can not be assumed that Congress intended either that the taxpayer's judgment as to the propriety or wisdom of his method or that the Board's judgment in a particular case when not supported by broad administrative considerations as well as the taxpayer's individual premises should override the Commissioners' sound discretion. That the Board has jurisdiction to review his determination does not mean *13 that its judgment is to be substituted for that of the Commissioner merely because both may be within the bounds of reason. This may mean nothing more than the Commissioner's determination is presumed to be correct, but Congress seems to have given the presumption greater emphasis by its express legislation than that of the general presumption which applies to all determinations of deficiencies." See also ; , affd. per curiam (C.A. 5, 1956); . What constitutes a reasonable addition to a reserve for bad debts on receivables presents fundamentally a question of fact and depends on a variety of factors existing at the time the estimate is made, such as the total amount of debts outstanding as of the close of the taxable year, general business conditions, the facts and circumstances of the business engaged in with relation to general business conditions, the amount of the existing reserve, and other material factors. Regulations 118, sec. 39.23(k)-5. , *14 affd. on another issue, (C.A. 6, 1942); . Fundamentally, a reserve for bad debts should reflect a reasonable estimate of bad debt losses to be absorbed. The backbone of the problem is a determination of the amount of receivables which the taxpayer is likely to be unable to collect. Collection experience in the past is, of course, a factor of material significance, although not necessarily controlling. See ; , affd. see supra, . All of the applicable circumstances (including any change in economic conditions and changes in class of clientele dealt with, as argued by petitioner) are to be considered at the time additions to or deductions from the reserve are made because they may be factors in demonstrating that future prospects of collection are better or worse than in the past. With these principles in mind, we turn to petitioner's evidence in support of his contention that the additions in question to reserves for *15 bad debts were reasonable. We need not consider whether the evidence was reliable or convincing since, in our judgment, even if accepted at face, it does not reflect upon the reasonableness of the additions to reserves in question. The record does not disclose petitioner's past experience of actual losses over a period, or the likelihood of future losses. His substantial reliance in measuring the reserves and additions thereto is based upon the difference between the face amount of the receivables and the amount which petitioner claims to represent their fair market value. But fair market value is not a test of collectibility. It is true that collectibility may be one of the factors in determining fair market value, but the latter may be based upon factors which do not reflect upon collectibility. For example, and without limiting the generality of the views here expressed, fair market value may be determined by such factors as interest rates, length of time provided for payment, whether or not there is a ready market for the type of paper involved, the condition of the money market, the extent to which, if any, prior liens have been reduced, and, of course, the credit standing of *16 the obligor and the nature of any supporting security. The latter factors have a reasonable relationship to collectibility, but they are not established in the record before us in a way which would enable us to hold that respondent's determination is unreasonable in whole or in part or what the proper amount of the reserves or the additions thereto, here in issue, should be. While reserves for bad debts may be adjusted periodically based on actual collection experience, the taxpayer is not entitled to deduct additions to a reserve merely to reflect fair farket value of the receivables. Under the circumstances, we have no recourse but to hold that petitioner has failed to meet his burden of proof of error in respondent's determination (except as to the excess conceded) or that petitioner is entitled to any further additions to reserves not claimed on his returns. II. Unreported Income Respondent determined that assets totalling $1,055 recorded on petitioner's books in the taxable year 1953, came from an "undisclosed source" and represented additional income to petitioner for said year. Respondent concedes on brief that $550 of this amount was not 1953 income. Petitioner urges *17 that the unconceded difference of $505 is an erroneous addition to income on the ground that it is only an adjustment of an error of a prior accounting period resulting from the purchase of stock in the First Federal Savings and Loan Association of Waco, Texas. Regulations 118, sec. 39.42-1(a). Respondent's determination is, of course, presumptively correct and petitioner has offered no evidence showing error in such determination except as to the amount conceded. We must, accordingly, sustain respondent to the extent of $505. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such a debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * The pertinent Treasury Regulation promulgated thereunder is No. 118 as follows: Section 39.23(k)-5 Reserve for bad debts - (a) Taxpayer other than mutual savings banks, building and loan associations, and cooperative banks. (1) Taxpayers who have established the reserve method of treating bad debts and maintained proper reserve accounts for bad debts, or who, in accordance with § 39.23(k)-1, adopt the reserve method of treating bad debts, may deduct from gross income a reasonable addition to a reserve for bad debts in lieu of a deduction for specific bad debt items. (2) What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve. In case subsequent realizations upon outstanding debts prove to be more or less than estimated at the time of the creation of the existing reserve, the amount of the excess or inadequacy inthe existing reserve should be reflected inthe determination of the reasonable addition necessary in the taxable year. * * *↩